James McCLENDON and Elizabeth M.
McClendon, as Next Friends of Kristen
McClendon, a Minor, Petitioners,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.

No. 90–579V.

United States Court of Federal Claims.

Jan. 29, 1993.

Michael G. McLaren, Memphis, TN, for petitioners.

Richard A. Schollman, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction and Procedural History* [1]

The petitioners, James and Elizabeth M. McClendon, are seeking relief under the National Childhood Vaccine Injury Act of 1986, codified and amended at 42 U.S.C.A. §§ 300aa–1, *et seq.* (West Supp.1992) (the Act) for injuries suffered by their daughter, Kristen McClendon. In this regard, the petitioners alleged that Kristen received a diphtheria, pertussis, and tetanus (DPT) vaccination on October 21, 1982, and that she suffered compensable injuries under the Act.

Initially this case was before Special Master Paul T. Baird for decision, which issued on March 8, 1991. That decision denied compensation to the petitioners because they purportedly failed to establish, by a preponderance of the evidence, the existence of either presumed causation under the vaccine injury table contained in 42 U.S.C.A. § 300aa–14 or actual causation of such injury. The question presented to the special master at that time was whether the petitioners proved the requisite causal relationship between the October 21, 1982 DPT vaccination and Kristen's subsequent injuries. The petitioners asserted that they were entitled to compensation under the Act because Kristen was vaccinated with DPT, because an encephalopathy developed and a seizure occurred within 72 hours, and those injuries in turn caused a residual seizure disorder, mental retardation, and impaired development. Thus, they claimed that compensation was due on the basis of either a "table injury" or causation in fact. The respondent, on the other hand, averred that Kristen suffered a mixed-seizure disorder of cryptogenic etiology unrelated to the DPT vaccine. On that basis, therefore, it argued that there was no table injury as well as no causation in fact.

Petitioners filed a motion for review of the special master's finding of no compensable injury on April 4, 1991. We reviewed the special master's decision to determine whether petitioners had established, by the requisite quantum of proof, the necessary causal relationship between the DPT vaccination and the injuries suffered by Kristen. After a thorough review of the special master's decision, on May 21, 1991, we remanded the petition for further consideration under §§ 300aa–12(e)(2)(C) for two reasons. First, we found that the special master failed to make all of the findings of fact and conclusions of law required by the eligibility rule stated in § 300aa–13(a), and that these omissions prevented us from conducting the effective § 300aa–12(e)(2) review of his report. Additionally, the special master had summarily dismissed the credibility of petitioners' medical expert without detailing operative reasons therefor. Secondly, the special master decided this matter prior to the time that the Court of Appeals for the Federal Circuit (CAFC) issued its opinion in *Bunting v. Secretary of the Department of Health and Human Services*, 931 F.2d 867 (Fed.Cir.1991). We held that the criticality of that decision on this case required that the special master reconsider his evaluation of the expert medical testimony, as well as the entire record evidence adduced, in the context of *Bunting*. Thus, the court remanded the case to the special master to reconsider his findings and to clarify his reasoning for dismissing the testimony of petitioners' medical expert.

On July 3, 1991, the special master issued his responsive remand decision, which again denied compensation on the merits. The petitioners, thereafter, on July 26, 1991, renewed their previously-filed objections. The special master's second decision was largely a reiteration of the first. On September 25, 1991, we issued a decision,

---

1. For a detailed overview of the overall operative facts, we refer you to *McClendon et al. v. Secretary of the Department of Health and Hu-* *man Services,* 23 Cl.Ct. 191 (1991), and 24 Cl.Ct. 329 (1991).

in response to petitioners' objections, finding that the special master's July 3, 1991 decision was arbitrary, capricious, and contrary to the law. Consequently, we reversed the special master's decision and remanded the case for further proceedings solely on the question of entitlement to damages. 24 Cl.Ct. 329.

On September 8, 1992, the special master issued his decision with regard to entitlement to damages. In that decision, *inter alia*, "[t]he special master found that there *was* justification for private schooling and speech therapy because of Kristen's peculiar needs with respect to sleep." *McClendon v. Secretary of the Department of Health and Human Services*, No. 90–579V (September 8, 1992) (emphasis added).

Respondent, in opposition, filed a Motion for Review and Memorandum of Objections on October 8, 1992, of the special master's award of compensation for educational needs, alleging that the Individuals With Disabilities Education Act (IDEA) provides for educational services for all disabled children and that, because the Vaccine Act is intended to be a secondary source of compensation for education, such compensation should not be awarded under the Vaccine Act in light of this "state compensation program."

Petitioners, in turn, filed their Response To Motion For Review and Memorandum of Objections on November 9, 1992. Therein, they presented authority to support their position that the general services contemplated by the IDEA are not a reasonable and responsive substitute for the more specific needs of Kristen as contemplated by the special master's award of education and speech therapy compensation. We find that both the Vaccine Act and the relevant case law indicate that our standard of review of factual findings, legal conclusions, and statutory interpretation of the Act is highly deferential. That is to say, such conclusions may be overturned only where they are found to be unreasonable and unmistakenly clearly erroneous. The special master has interpreted the Vaccine Act, specifically 42 U.S.C.A. § 300aa–15(g), to place the burden on the respondent to

prove, as an affirmative defense, that petitioners' needs would be met by a state compensation program. Against this background, he has found that respondent has failed to meet that burden. We do not find the special master's conclusions to be unreasonable *or* clearly erroneous. The court is inclined, on this record, to agree with the special master's findings, and we, therefore, *AFFIRM* his award of monetary compensation to petitioners for purposes of private schooling and speech therapy.

*Contentions of the Parties*

Respondent

Respondent makes three contentions. First, it alleges that the court should not afford the same weight to conclusions of law made by the special master as the weight it affords conclusions of fact. Further, respondent alleges that questions of law are subject to *de novo* review. Next, it takes the position that the special master erred, as a matter of law, in providing compensation for special education where the State of Mississippi has assumed that responsibility under the IDEA. Respondent highlights § 300aa–15(g) of the Vaccine Act for the proposition that the government is not "primarily liable" for injury compensation under the Act. In other words, it argues that said Act provides that where a "state compensation program" exists which would provide the same relief to the petitioners as that to which they are entitled in view of vaccine injury, the Act does not permit compensation thereunder to the extent that it overlaps entitlement to compensation from such other source. Alleging that our prior decision in *Stotts v. Secretary of the Department of Health and Human Services*, 23 Cl.Ct. 352 (1991), went too far in permitting Vaccine Act payment in lieu of IDEA coverage, respondent cites *Taylor v. Secretary of the Department of Health and Human Services*, 24 Cl.Ct. 433 (1991), for the proposition that the IDEA requires states to pay for educational services of disabled children where the state chooses not to apply them directly. Lastly, respondent contends that the special master erred as a matter of law by failing to provide sufficient reasoning for

reaching his conclusion that private special education would be necessary and that public special education in Mississippi would not provide sufficient care in addressing Kristen's needs.

Petitioners

Petitioners respond, first, by alleging that we must afford the special master's decision substantial deference both in his conclusions of fact and law, and that said decision may only be overturned if it is found by this court to be arbitrary, capricious, and an abuse of discretion. Next, petitioners allege that case law supports the special master's finding that the public education system would *not* provide for the *special educational and speech therapy* needs of Kristen, citing *Stotts* and distinguishing *Taylor.*

*Issues*

There are three basic issues to be resolved relative to the motion for review and opposition thereto. First, the parties disagree as to the level of scrutiny required to be given to the special master's conclusions of law. The second issue to be resolved is whether the IDEA is indeed the primary source to supply the special education and speech therapy needs of Kristen or whether the Vaccine Act, *ipso facto,* permits awards of compensation ordered by the special master to be paid by the government for *special* educational needs of those children disabled by vaccination. Finally, this court must resolve whether the special master has made sufficient findings with regard to the ability of the public educational system of Mississippi to meet Kristen's needs.

*Discussion*

I. *Standard of Review*

■ Prior to deciding the merits of respondent's motion relative to the special master's finding as to entitlement of compensation for Kristen's education and speech therapy needs, the court necessarily must address the threshold disagreement between the parties as to the appropriate

standard by which we are compelled to review the findings of the special master. In this connection, the respondent alleges that this court must review findings of fact by the special master with great deference, overturning only those that are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. However, respondent also alleges that, where the issue is whether the special master's decision was "in accordance with the law," as opposed to whether he properly decided the facts, the applicable standard changes to a *de novo* review. Petitioners, on the other hand, allege that both conclusions of fact *and* law are to be reviewed by a highly deferential standard. Moreover, petitioners contend that the Vaccine Act and case law require this court to uphold the special master's conclusions of law where they are not arbitrary, capricious, or an abuse of discretion, and are otherwise in accordance with the law.

The Vaccine Act provides, in pertinent parts, as follows:

Upon filing a motion [to have the Court of Federal Claims [2] review the special master's decision] with respect to a petition, the [United States Court of Federal Claims] shall have jurisdiction to undertake a review of the record and may thereafter—

.    .    .    .    .

(B) *set aside* any findings *or conclusions of law* of the special master found *to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law* and issue its own findings of fact and conclusions of law, or (C) *remand* the petition to the special master for further action in accordance with the court's direction. . . .

42 U.S.C.A. § 300aa–12(e)(2) (West Supp. 1992) (emphasis added). We have examined this statutory standard and its genesis with prior standards imposed on this court in our earlier decision in *Stotts.* In that decision, this court set out a lengthy discussion of the evolution of the standard of

**2.** Pursuant to the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), the name—"United States Claims Court"—has been changed to—"United States Court of Federal Claims."

review of the special masters' decisions under the Vaccine Act. *Stotts*, 23 Cl.Ct. at 358–62. We find that the Vaccine Act (specifically § 300aa–12(e)) dictates that:

> Our review of the special master's decision has been *severely* circumscribed. It has narrowed to the extent that *both findings of fact and conclusions of law can be overturned, under the plain language of § 300aa–12(e)(2)(B), only if they are arbitrary, capricious, an abuse of discretion, or contrary to law.*

*Id.* at 360 (emphasis added). *See Hines v. Secretary of the Department of Health and Human Services*, 21 Cl.Ct. 634, 639 (1990) (the arbitrary, capricious, and abuse of discretion standard of review applies to both the findings of fact and conclusions of law by the special master). The CAFC has also held that the effect of this standard of review "is to give the special master's determination decisional effect, placing the [Court of Federal Claims'] judge in the role of a reviewing judge." *See Munn v. Secretary of the Department of Health and Human Services*, 970 F.2d 863, 869 (Fed. Cir.1992).

The foregoing is clearly consistent with the Program's goals as envisioned by Congress in its search to avoid a recreation of the adversarial system, wherein it stated that:

> [The standard of review now codified in 42 U.S.C.A. § 300aa–12(e)(2)(B) (West Supp.1990)] provides for an appeal of the [special] master's decision ... under very limited circumstances. The Conferees have provided for a limited standard of appeal from the [special] master's decision and do not intend that this procedure be used frequently but rather in those cases in which a *truly* arbitrary decision has been made.

H.R.Conf.Rep. No. 101–386, 101st Cong., 1st Sess., at 512–513, 517, *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906, 3018, 3112, 3115, 3120 (emphasis added).

The respondent cited several cases for the proposition that the applicable standard of review "changes" when the issue is whether the special master's decision was " 'in accordance with law.' " In none of the cases cited for this proposition has the court held that our standard of review changes. Further, respondent cites this string of cases to support the proposition that our standard for review of questions of law is *de novo*. Respondent is in error. Each case cited, in fact, held the opposite to be true; *i.e.*, that the standard, even for questions of law, is highly deferential and is the same as the standard of review for questions of fact. To that extent, we view respondent's cited cases as providing no comfort for its position.

In reviewing conclusions of law by the special master, especially regarding matters of statutory construction, we consider as controlling an analogous circumstance in which the CAFC held that:

> This court will give substantial weight to the interpretation given a statute by ... [those] charged with its administration. [footnote citations omitted] This deference is particularly appropriate when "the administrative practice at stake 'involves a contemporaneous construction of a statute by ... [those] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' " [footnote citations omitted] The ... construction of a statute should be followed unless there are compelling indications that it is wrong. [footnote citations omitted] *The ... interpretation need not be the only reasonable construction, or the one the court would have adopted had the question arisen initially in a judicial proceeding; it just has to be a reasonable interpretation.* [footnote citations omitted].

*Chula Vista City School District v. Bennett*, 824 F.2d 1573, 1579–80 (Fed.Cir.1987) (emphasis added). Also, *Munn* does not indicate a *de novo* standard by this court, but rather indicates a highly deferential standard by referring directly to the statute for that standard.

The findings of fact *and conclusions of law* of the special master may be set aside *only* if found violative of the standard of review set forth in the statute, a

standard of review which is highly deferential.... Absent that, the special master's decision is final, and the clerk of the ... Court is mandated to enter judgment in accordance with the special master's decision....

*Munn*, 970 F.2d at 869 (emphasis added).

■ Given the foregoing admonishment by the CAFC and because the Office of the Special Masters is charged with the primary and threshold responsibility of interpreting and applying subject novel Vaccine Act provisions, a "decision on issues of law [by a special master] should be overturned only when error is unmistakenly clear." *Munn v. Secretary of the Department of Health and Human Services*, 21 Cl.Ct. 345, 348 (1990) (emphasis added). *See also Hale v. Secretary of the Department of Health and Human Services*, 22 Cl.Ct. 403, 406 (1991); and *Hines*, 21 Cl.Ct. at 651 n. 11 (conclusions of law by the special master are entitled to "a significant amount of respect"). Therefore, if the special master adopts an interpretation of a Vaccine Act provision that has a reasonable basis in the law, that interpretation must be sustained even if there are other reasonable interpretations warranted by the same provision. *Stotts*, 23 Cl.Ct. at 361 (citations omitted). Thus,

[w]e will *not reject a conclusion of law by the special master unless it contravenes the statutory provision, the clearly discernable legislative intent* [3]*, or is otherwise unreasonable or irrational.*

*Id.*, citing *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir.1986) (emphasis added). This court will, therefore, review the special master's findings by granting substantial deference, particularly with respect to matters of statutory interpretation.

II. *Vaccine Act Compensation for Education Under the IDEA*

■ Respondent alleges that the special master erred as a matter of law by granting compensation for the educational and speech therapy needs of Kristen because the State of Mississippi has primarily assumed that responsibility under the IDEA. It, therefore, contends that the Vaccine Act makes the government liable only as a "secondary source" of payment. Since states, including Mississippi, are obligated to provide special education for all disabled children under the IDEA, respondent alleges that this is a "state compensation program," as contemplated in § 300aa–15(g) of the Vaccine Act, *infra*. Therefore, argues respondent, petitioners may not receive compensation for those services which are otherwise provided or paid for under the IDEA. Further, respondent avers that the special master made insufficient findings to establish Kristen's entitlement to peculiar needs for compensation for highly-specialized education and speech therapy.

It is respondent's position that petitioners bore the burden of proving that the state system in Mississippi, under the IDEA, would not sufficiently satisfy Kristen's needs. Petitioners, on the other hand, strenuously contend that it is the respondent who bears the burden of proving that the state public education system could, in fact, provide the highly-specialized needed services to Kristen. We believe, as discussed *infra*, that the special master, in concluding that Kristen's peculiar needs required the awarded compensation for education and speech therapy without any set-off, properly interpreted § 300aa–15(g) of the Vaccine Act to place an affirmative burden on the respondent. That burden requires respondent to prove that the public educational system is capable of providing Kristen with the education and speech therapy services she needs. We further find, *infra*, that the special master's legal conclusion was not clearly mistaken and that his reading of the Vaccine Act was not unreasonable or unmistaken error. Moreover, we find that the special master's factual finding "that there was justification for private schooling and speech therapy

---

**3.** The standard of review outlined in § 300aa–12(e)(2)(B) does not present any problems of ambiguity in its interpretation. Of course, where the meaning of a statute is plain on its face, as here, we do not need to examine the legislative history. *Ocean Drilling & Exploration Co. v. United States*, 220 Ct.Cl. 395, 600 F.2d 1343 (1979).

because of Kristen's peculiar needs with respect to sleep" was neither arbitrary, capricious, nor an abuse of discretion.

Section 300aa–15(g) of the Vaccine Act provides as follows:

> (g) Program not primarily liable. Payment of compensation under the Program *shall not be made* for any item of service to the extent that payment has been made *or can reasonably be expected to be made*, with respect to such item or service (1) under any state compensation program, under an insurance policy, or under any Federal or State health benefits program (other than under title XIX of the Social Security Act) or (2) by an entity which provides health services on a prepaid basis.

42 U.S.C.A. § 300aa–15(g) (West Supp. 1992) (emphasis added). The Vaccine Act states, in relevant parts, that, where another "state compensation program" or "federal or state benefits program" exists which would provide the same relief to the petitioner as that to which it is entitled because of vaccine injury, the Vaccine Act does not permit compensation to the extent that it overlaps compensation from the other source. Respondent's argument, however, involves the following provision of the IDEA:

> (c) Purpose
> It is the purpose of this [Act] to assure that all children with disabilities have available to them, within the time periods specified in section 1412(2)(B) of this title, a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess the effectiveness of efforts to educate children with disabilities.

20 U.S.C.A. § 1400 (West Supp.1992). The parties disagree as to the appropriate connection to be made between these two statutes. Respondent contends that the State

of Mississippi is obligated to provide Kristen with a "special education and related services, in conformance with an individualized educational program, at no cost to [her] parents or guardian." [4] Petitioners contend, however, that the State of Mississippi does not offer an educational program to meet Kristen's special and "peculiar needs with respect to sleep," and consequently, the special master was justified in making a compensation award for education on that basis, regardless of the existence of the IDEA. Conversely, respondent argues that Mississippi's obligation under the IDEA would be to provide Kristen with the same education and speech therapy services for which the special master awarded the petitioners compensation, regardless of her "peculiar" needs.

In addition to the foregoing, the central debate concerns the parties' relative positions as to the initial burden of proof. While respondent contends that petitioners have the burden under the Vaccine Act to establish that the compensation claimed is not compensation for an item or service that is provided under a state compensation program or federal or state benefits program, petitioners, nevertheless, contend that § 300aa–15(g) of the Vaccine Act sets up an affirmative defense to the payment, to which petitioners may otherwise be entitled, in favor of the respondent. Thus, petitioners argue that if the special master's award concerns an item or service provided under a circumstance listed in § 300aa–15(g), respondent then has the affirmative burden to establish that such program is available to petitioners to satisfy that specific item or service needed.

Here the record shows that Mrs. McClendon testified that the public school system was inadequate for Kristen's special needs because school began at 7:15 a.m., and Kristen "does not function unless she wakes herself up." Tr. 41. Moreover, Kristen has need for a nap between noon and 3 p.m. (Tr. 55–56); and the public school was "not happy" with Kristen's special problems (Tr. 40–41). Kristen was,

---

**4.** It is uncontested that the State of Mississippi participates in this program. *See* Respondent's

Motion for Review, filed October 8, 1992, at 7 n. 3.

therefore, taken out of public school. Tr. 43. Respondent contends, against this background, that petitioners, nevertheless, had a duty to seek such specialized services as a necessary requirement to entitlement to compensation award under the Vaccine Act for educational service. *See Thomas v. Secretary of the Department of Health and Human Services*, No. 90–2022V, slip op., 1992 WL 210077 (Cl.Ct.Sp.Mstr. August 14, 1992).

The court specifically held in *Thomas* that, without formal request for services, a petitioner may not receive payment for educational services under the Vaccine Act in a state obligated by the IDEA. *Id.* We further observe in *Thomas* that the court also stated that "petitioner need not demonstrate to an absolute certainty the unavailability of benefits under [the] IDEA." There are two major distinctions between the decision in *Thomas* and our holding here. First, the court placed the burden on the petitioner, requiring a "formal request for benefits under the Act—and a formal denial of those benefits by the necessary authorities." *Thomas v. Secretary of the Department of Health and Human Services*, No. 90–2022V, slip op., Remand Order at 5, 1992 WL 471681 (Cl.Ct. May 14, 1992). The court also based its rejection of the special master's finding where compensation was awarded to the petitioners without their demonstrating a *formal* request for benefits, on the fact that the disabled child in that case had *psychological* disorders which lead to learning disabilities. *Thomas*, at 4. There, the court focused on the fact that "children with specific learning disabilities" were "placed squarely within the category of those with whom the IDEA" addresses. *Id.*

The situation determined by the special master in the case at bar is easily distinguishable from *Thomas* in that the special master has found here that Kristen's disorder, which made public education impracticable and unavailable and required compensation to aid in her education, was strictly physiological, *i.e.*, her "peculiar needs with respect to sleep." Thus, Kristen is not "squarely within the category" of learning disabilities contemplated in the IDEA. Our

only obligation in reviewing the special master's decision with respect to allocating the burden under § 300aa–15(g) is to determine if this interpretation is reasonable and to be assured that there is no error which is "unmistakenly clear." *See supra.*

We note also the second distinction we make with the decision in *Thomas*. The court in that decision specifically postures the question addressed to be—"whether the special master *'was correct'* in holding that [the child's] disabilities were not redressable under the IDEA and were, therefore, properly compensable under the Vaccine Act." *Thomas*, at 2 (emphasis added). This court respectfully takes issue with that statement as the "single question" before that court for purposes of reviewing the special master's award. As stated above, our only obligation in reviewing the special master's decision is to determine if his interpretation is reasonable and to be assured that there is no error that is unmistakably clear. *Stotts*, 23 Cl.Ct. at 360; *Hale*, 22 Cl.Ct. at 406. The court, of course, under this standard does not substitute its own judgment for that of the special master. The special master's decision may be reasonable even where this court does not agree with him. "[W]e are only required to determine whether [the special master's decision] was based on irrelevant factors, whether it was without rational basis, or whether it represents a clear error in judgment." *Stotts*, at 360 (citations omitted). Thus, a court should uphold a decision of the special master if it is reasonable, regardless of whether it finds that if it were deciding the issue anew it would have decided it differently. *Id.*, at 360. Therefore, we are unable to speculate as to whether the *Thomas* court found the special master to have been unreasonable, as it appears that it has substituted its own judgment in determining whether he "was correct" in his base decision.

The special master's finding in this matter at bar was as follows:

The special master found that there was justification for private schooling and speech therapy because of Kristen's peculiar needs with respect to sleep.

The annual awards for those items from the present through age 22 are as follows: School tuition, $3000; speech therapy, $3750.

*McClendon,* No. 90–579V (September 8, 1992). The special master made no other findings relative to Kristen's education. Such findings, while cryptic, establish a reasonable inference that the public education system was in fact unable to meet Kristen's special needs. By stating that compensation was to be awarded "because of Kristen's peculiar needs," the special master clearly indicates that he has made a determination that such services were not available. He has also indicated, in this abbreviated finding, that he interprets the statute to place the burden on the respondent to prove that the services were otherwise available to the petitioners, interpreting § 300aa–15(g) to be an affirmative defense of the government, thus placing the burden of proof on the respondent. Extrapolating, therefore, from the brevity of his findings, we hold that the special master found, in substance, that it was respondent's burden to prove availability. This is not at odds with the legislative history inasmuch as Congress underscored that it "intended a quick, flexible, and streamline system. [A system] call[ing] for a compensation procedure that administered awards quickly, easily, and with certainty and generosity." *Id.*

■ We have stated that the appropriate standard for reviewing the special master's finding is a determination of whether it was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law, *i.e.,* whether error is unmistakenly clear. *Hale,* at 406. We have defined this standard earlier in our decision in *Stotts* at 370. A decision is arbitrary and capricious when the special master relies on:

[f]actors which Congress did not intend for [him] to consider, entirely failed to

consider an important aspect of the problem, offered an explanation for the decision that runs counter to the evidence before [him], or offered an explanation that is so implausible that it cannot be ascribed to a difference in view or the product of [his] expertise in the application of the [Vaccine Act] provisions.

*Id.* at 370 (citations omitted). Similarly, an abuse of discretion occurs only if:

[findings] are (1) clearly unreasonable, arbitrary or fanciful, (2) based on an erroneous conclusion of law, (3) clearly erroneous, or (4) without any rational basis in the record of evidence.

*Stotts,* at 370 citing *Heat & Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1022 (Fed.Cir.1986). Based on the record evidence, we hold that the special master's finding, that the State of Mississippi would be unable to meet Kristen's peculiar needs with respect to sleep, is neither arbitrary, capricious, nor an abuse of discretion, as defined *supra.* Moreover, we hold that the special master has in no way manifested a reliance on improper factors or an omission of consideration of relevant factors. His findings are clearly reasonable. In *Munn,* 970 F.2d at 871, the CAFC stated that:

It is, after all, the special masters to whom Congress has accorded the status of expert, entitling them to the special statutory deference in fact-finding normally reserved for specialized agencies.[5]

Additionally, the special master indicates in his findings an interpretation of § 300aa–15(g) which establishes it as an affirmative defense to compensation rather than an obstacle to award, requiring that the respondent bear the burden of establishing that such a program exists which is available to petitioners to serve as the primary source of payment for the relevant item or service. Such a legal conclusion should be afforded high deference. In fact, a statutory interpretation by the body charged with administration of that statute

5. The *Munn* court also stated (at 870) that:
When a case comes before us in which the Claims Court has upheld the findings and conclusions of the special master against a charge that they were arbitrary and capricious, and the Claims Court has rendered judgment accordingly, *it follows that the Claims Court's judgment is entitled to at least the same deference by us as that accorded the special master by the Claims Court....* (emphasis added).

is given substantial weight. *Chula Vista*, 824 F.2d at 1579–80. Again, as we have already discussed, such an interpretation shall not be overturned unless found to be unreasonable and an error that is unmistakenly clear. *Hale*, 22 Cl.Ct. at 406.[6]

Finally, respondent referred to this court's holding in *Stotts* where an offset pursuant to the IDEA was not required as being contrary to a subsequent opinion, *Taylor, supra,* in which the predecessor Claims Court held that the special master was correct in denying any compensation to the petitioners for educational needs in light of the IDEA. The two cases are distinguishable from several aspects. First, the petitioners in that case sought compensation to place their son in a residential facility for treatment and education. *Taylor*, 24 Cl.Ct. at 435. Factually, the case is different than the present case because the special master found that Georgia, also obligated under the IDEA, was capable of providing the residential placement services for petitioners' son and because the IDEA clearly assumes the responsibility for residential placement. *Id.* at 437. This court does not take issue with that finding either. Kristen's physiological difficulties were found to be "peculiar" or unique, placing petitioners in a very different situation than the subject in the *Taylor* case where the child's needs were primarily routine in the education of the disabled. Here the special master has determined, in essence, that the State of Mississippi is not capable of meeting Kristen's needs, whereas the special master in *Taylor* found that the State of Georgia was so capable. *Id.* at 435. We simply hold that the special master in the instant case was *reasonable* in finding that *Mississippi* was unable to meet Kristen's "peculiar needs" and that this decision was *rationally based* on the language of the relevant statutory provisions.

*Conclusion*

We hold, given all of the foregoing, that the special master, in making his findings of fact and conclusions of law, was not arbitrary or capricious, did not abuse his discretion, or otherwise did not fail to act according to law, when he refused to make a § 300aa–15(g) offset "for any items or service to the extent that payment has been made or can reasonably be expected to be made." The opinion below is hereby AFFIRMED, and the Clerk shall enter judgment consistent with the special master's opinion. No costs.

**IT IS SO ORDERED.**

---

6. The third issue argued by the respondent addressed concern that the special master had failed to provide sufficient findings to support his conclusion that the education of Kristen could not properly be provided by the State of Mississippi. We need not reach this issue. Because we find that the special master properly placed the burden on the respondent to prove that the state system was sufficient for Kristen's needs, and, because we find that position to be reasonable, we further find that it was respondent's obligation to have offered additional probative evidence on that issue.